DAVID M. GLOVER, Judge
Appellant Janet Smyth appeals the Washington County Circuit Court's dismissal of her petition for contempt against her ex-husband, appellee James Smyth, for failure to mediate and to mediate in good faith. Janet presents seven points on appeal. She contends the circuit court (1) erred in finding the parties had not mediated and therefore erred in granting James's motion to dismiss on that basis and in denying her motion to reconsider; alternatively, the circuit court erred in finding, as James alleged, that she had not mediated in good faith, in dismissing her motion to modify, and in denying her motion to reconsider on that basis; (2) abused its discretion in dismissing her motion without holding a hearing and in refusing to grant her motion to reconsider when James alleged she did not attend mediation when she alleged she had, thus creating a factual issue; (3) abused its discretion in ordering the parties to attend mediation within ten days or have the case dismissed; (4) abused its discretion in dismissing her case without qualification while dismissing James's case without prejudice; (5) committed plain error in dismissing her entire case when, as James alleged, she had mediated issues that were contained in her contempt motion; (6) erred and abused its discretion in failing to rule on her motions to strike, for clarification, and for reconsideration; and (7) erred in making mediation a prerequisite to filing a motion to modify and for contempt and refusing to grant her motion for reconsideration on that issue, as compelling mediation before bringing a case to court is a violation of article 2, section 13 of the Arkansas Constitution. We reverse and remand.
History of Pleadings Since Divorce
The parties were divorced in September 2010. The divorce decree awarded Janet primary custody of the parties' two minor children, with James having reasonable visitation. James was ordered, among other things, to pay alimony and child support; buy Janet out of certain corporate/LLC
*475 entities; refinance any debts on which Janet was a guarantor within two years of entry of the divorce decree; be responsible for any marital debt; and maintain a $ 1,000,000 life-insurance policy with Janet as the beneficiary and a disability policy to ensure Janet would receive her monetary payments as ordered under the divorce decree.
On September 23, 2011, an order was entered concerning visitation issues and the dates of certain payments James was to make to Janet. Additionally, paragraph fourteen of this order stated, "The parties shall submit to mediation prior to filing any future Petitions to Modify this Order or the Decree of Divorce previously filed herein." In an order filed on August 8, 2014, entitled "Final Agreed Order," the parties agreed James would have primary custody of their son (their older child), and the parties would share custody of their daughter, subject to reasonable visitation by both parties. Janet agreed to move back to the Fayetteville area to facilitate the joint custody, and the parties agreed that neither party would pay child support. In addition, paragraph eleven of the final agreed order provided that "should any future disputes between the parties arise that the parties are unable to resolve themselves, the parties shall first make a good faith effort to resolve said dispute in mediation prior to seeking relief in this court." In April 2015, this provision was enforced by the circuit court, as evidenced by its dismissal of Janet's motion for contempt and to modify custody for failure to attend mediation prior to seeking relief from the circuit court.
In July 2017, mediator Sue Ann Newman filed a letter with the circuit court advising that mediation between James and Janet was held on July 18, 2017; both parties attended and participated in the mediation; but no mediation agreement was executed. On November 17, Janet filed a motion for contempt and modification of child support; an amended motion was filed on December 6. Janet's motion alleged James had continued to make alimony and certain other marital-interest payments late, making only partial payments at times; had not removed her as guarantor on certain marital obligations; had failed to pay certain marital debts; had changed the beneficiary on his insurance policy to his new wife; had let the insurance policy lapse and had replaced it with a new policy with different provisions; had failed to attend parent-teacher conferences with her; had taken their daughter out of state without Janet's prior knowledge; and had failed to pick up their daughter on two occasions. Additionally, Janet asked that child support be ordered for the parties' daughter of whom the parties shared joint custody (their son had reached the age of majority by this time); requested that a protective order regarding James's financial information be lifted; and asked that visitation be updated to the current Washington County standard visitation schedule with modifications to reflect the joint-custody arrangement. In her motion, Janet acknowledged the parties were required to attend mediation prior to filing any modification actions and noted mediation had been completed in the summer of 2017, and the mediator had notified the circuit court via letter of the attempt at mediation.
In his answer, James asserted that Janet had "willfully, intentionally and maliciously violated the orders of this Court ... by failing and refusing to go to mediation prior to filing her present cause of action." James further alleged Janet was attempting to relitigate matters that had been fully and completely resolved pursuant to the July 2014 final agreed order. James denied Janet's allegations and further stated Janet had "knowingly and intentionally *476 refused to seek mediation regarding her claims of child support prior to filing her Motion in this matter in a knowing, willful and malicious violation of paragraph 11 of the Final Agreed Order entered in this case," and he requested that the circuit court dismiss her child-support claim for this reason. He further alleged Janet had failed to raise any concerns during mediation about his attendance at parent-teacher conferences, in violation of the requirement that the parties mediate prior to coming to court. James also stated Janet's allegation that he had taken the parties' daughter out of state without Janet's knowledge was made in bad faith and without any merit or justification, and Janet had "failed and refused to seek mediation" on this issue prior to filing her motion for contempt. James denied Janet had presented all issues to mediation prior to filing her motion for contempt in the circuit court and further denied that Janet had complied with the requirement to attend mediation as directed. He asked the circuit court to deny and dismiss Janet's contempt motion and to award him costs and attorney's fees.
At this time, James filed a counterpetition for contempt against Janet, noting the circuit court required the parties to attend mediation prior to seeking any relief from the circuit court; Janet had previously ignored the requirement to mediate, which resulted in the dismissal of her prior motion for contempt in April 2015; and Janet had again ignored the mediation requirement when she filed her latest motion for contempt without first seeking mediation on several matters raised in her motion-specifically an award of child support, James's failure to attend parent-teacher conferences, taking the parties' daughter out of state without her prior knowledge, requesting the protective order be lifted, and transportation requirements. James acknowledged the parties had mediated on two separate occasions-once in the summer of 2015 and most recently in July 2017. However, he asserted a March 31, 2017 letter from Janet's counsel had limited the issues to be mediated to the timing of alimony payments, the release of Janet as guarantor on certain real property, and conditions related to his procurement of life insurance. He further acknowledged that just before mediation, Janet's counsel provided a second document confirming the issues to be raised at mediation and adding two additional issues-paying a marital credit card and adopting the Washington County standard visitation schedule with modifications. James stated no other issues were raised at mediation other than the ones listed above and contended Janet had deliberately chosen not to raise issues in mediation that she now raised in her motion for contempt, in violation of the circuit court's order.
In reply to James's counterpetition for contempt, Janet alleged she had not refused to attend mediation in 2015 but that the mediation had just not occurred prior to her filing her contempt motion. She further noted that the letter setting out the issues she wished to address in the 2017 mediation also included the statement, "as well as other issues related to the parties," and she claimed the issues pled in her contempt petition were addressed or were attempted to be addressed in that mediation. Janet accused James of not mediating in good faith.
On January 16, 2018, the trial-court administrator emailed counsel for the parties and stated the circuit court asked that they "attend mediation and it shall be scheduled within 10 days of today" or the case would be dismissed. Counsel conferred with each other and the mediator and advised the circuit court on January 25, 2018-nine days after the circuit *477 court's directive-that mediation had been scheduled for April 11. The trial-court administrator then emailed counsel for the parties and stated the circuit court "asked that this case be mediated within 10 days" or it would be dismissed. Janet's counsel objected, replying in a letter to the circuit court that the parties had been told to schedule the mediation within ten days, not complete the mediation within that time, and she requested a hearing on the matter if the circuit court was going to dismiss the case.
On January 26, 2018, Janet filed a motion for clarification in which she requested guidance from the circuit court about the parties' mediation requirement. Janet explained she began initiating email exchanges with James in November 2016 to attempt to resolve many of the issues raised in the 2017 mediation, but nothing was resolved, and as a result, she requested mediation. Four months after the July 2017 mediation, Janet filed her contempt motion, and James filed his counterpetition for contempt. Janet asked for the circuit court's assistance in properly interpreting the mediation provision, specifically seeking "more specific rules or guidelines to follow, both in terms of when it is appropriate to seek mediation, and also how best to define good-faith efforts in mediation." Janet questioned if one of the parties believes the other party to be in contempt of a court order if the party is first required to attempt to mediate the issue or to move for contempt, especially if there was no real remedy to the contempt other than punishment by the circuit court; if mediation had occurred and a new dispute arises, did the parties have to mediate again; was showing up for mediation considered "good faith," as she believed all issues had been mediated but James alleged that not all issues were discussed; and when was a matter deemed mediated when that matter is part of a major topic that has been declined before it can even be discussed. Janet further alleged her former counsel's letter regarding issues to be mediated was of no moment because an agenda is not required prior to mediation, it is not proof of what was actually discussed in mediation, and it is in violation of Arkansas Code Annotated section 16-7-201 (Repl. 2010). The circuit court did not rule on this motion.
On the same day, January 26, Janet filed motions to strike portions of James's counterpetition for contempt and portions of his response to her contempt motion due to the fact he sought to introduce into the record as exhibits communications relating to the subject matter of the mediation which, Janet asserted, was in direct violation of Arkansas Code Annotated section 16-7-206(a). Janet also sought to have portions of James's response to her contempt motion struck because statements in his response were false, misleading, and had maligned her character before the circuit court by insinuating she had intentionally misled the circuit court. The circuit court also did not rule on either of these motions.
On February 2, 2018, the circuit court dismissed Janet's November 17, 2017 contempt motion and December 6, 2017 amended contempt motion for failure to seek and attend mediation in good faith prior to filing her pleadings and dismissed James's counterpetition for contempt, stating it could be refiled after the parties had attended mediation in good faith. Janet immediately filed a motion to reconsider or, in the alternative, for new trial; this motion was not ruled on by the circuit court and was deemed denied. Janet then filed a timely notice of appeal.
Standard of Review
The circuit court dismissed Janet's petition for contempt, as amended.
*478 Our standard of review for the granting of a motion to dismiss is whether the circuit court abused its discretion. Hall v. Jones , 2015 Ark. 2, 453 S.W.3d 674. When reviewing a circuit court's order granting a motion to dismiss, the facts alleged in the complaint are treated as true and viewed in the light most favorable to the plaintiff, which requires the facts to be liberally construed in the plaintiff's favor. Id. To abuse its discretion, the circuit court must have not only made an error in its decision but also must have acted improvidently, thoughtlessly, or without due consideration. Reed v. Smith , 2018 Ark. App. 313, 551 S.W.3d 407.
Mediation Authority
Courts in Arkansas are encouraged and authorized to employ dispute-resolution processes such as mediation to resolve disputes, cases, and controversies of all kinds. Ark. Code Ann. § 16-7-201. Each circuit and appellate court in Arkansas is "vested with the authority to order any civil, juvenile, probate, or domestic relations case or controversy pending before it to mediation." Ark. Code Ann. § 16-7-202(b). Additionally, when parties to a divorce action have minor children residing with one or both parties, the court, prior to or after entering a decree of divorce, may require the parties to submit to mediation in regard to addressing parenting, custody, and visitation issues. Ark. Code Ann. § 9-12-322(a)(2) (Repl. 2015). In this case, the parties agreed in 2014 to make a good-faith effort to resolve disputes in mediation before filing actions in the circuit court.
Discussion
Janet's seven points for reversal are all interrelated. Her overarching argument is that the circuit court erred in dismissing her contempt petition, as amended, on the basis she failed to mediate prior to filing her pleadings in the circuit court or, in the alternative, she failed to attend mediation in good faith. We hold this primary argument has merit. The parties clearly attended mediation in July 2017; both parties admit it; and it is evidenced by the mediator's letter to the circuit court stating that the parties attended and participated in mediation, with no mediation agreement being reached.
The only evidence before the circuit court on the issue of mediation was that the parties attended and participated in mediation without reaching an agreement. In his counterpetition for contempt, James asserted no issues were raised at mediation other than the issues Janet identified prior to mediation-the timing of alimony payments, selling property on which Janet was a guarantor, paying a marital credit card, obtaining an appropriate life-insurance policy, and adopting the Washington County standard visitation schedule with modifications. But Janet contends other issues were raised and mediated in addition to the above listed issues.
It is clear the parties agree certain issues were mediated as mandated by the agreed order. Therefore, it was an abuse of discretion for the circuit court to dismiss those portions of Janet's motion for contempt that the parties agree were mediated. James then argues, citing McCoy Farms, Inc. v. McKee , 263 Ark. 20, 563 S.W.2d 409 (1978), that even if the circuit court abused its discretion, the error was harmless because Janet could not show prejudice. We do not agree. If issues were in fact mediated, as required by the agreed order, and no resolution was reached, then Janet's remedy under the agreed order was to file her grievances with the circuit court. To hold otherwise would prevent Janet from accessing the circuit court, which is certainly prejudicial to her.
*479 The circuit court's order of dismissal also stated that Janet failed to attend mediation in good faith. This, too, we find was an abuse of discretion. The circuit court had no basis for its conclusion the parties had not mediated in good faith because there were no facts to support this holding.
James and Janet disagree whether issues other than the ones listed above were mediated. Janet claims other issues were mediated; James states they were not. The circuit court had no basis on which to determine whether other issues were or were not mediated without holding a hearing. Dismissing these contested claims was, therefore, an abuse of discretion.
Janet contends James's response to her petition for contempt improperly disclosed to the circuit court the substantive issues she sought to mediate in violation of Arkansas Code Annotated section 16-7-206. This statutory provision provides:
(a) Except as provided by subsection (c) of this section, a communication relating to the subject matter of any civil or criminal dispute made by a participant in a dispute resolution process, whether before or after the institution of formal judicial proceedings, is confidential and is not subject to disclosure and may not be used as evidence against a participant in any judicial or administrative proceeding.
(b) Any record or writing made at a dispute resolution process is confidential, and the participants or third party or parties facilitating the process shall not be required to testify in any proceedings related to or arising out of the matter in dispute or be subject to process requiring disclosure or production of information or data relating to or arising out of the matter in dispute.
(c) If this section conflicts with other legal requirements for disclosure of communications or materials, the issue of confidentiality may be presented to the court having jurisdiction of the proceedings to determine in camera whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure.
We do not agree with Janet's broad interpretation of this statute. Our court reviews issues of statutory construction de novo. Andreasen v. South Mtn. Estates Prop. Owners Ass'n , 2018 Ark. App. 530, 564 S.W.3d 262 (citing Mamo Transp., Inc. v. Williams , 375 Ark. 97, 289 S.W.3d 79 (2008) ). The basic rule of statutory construction is to give effect to the intent of the General Assembly. Id. In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. We construe the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. Id. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory construction. Id.
While subsection 206 does prevent revealing the particulars of the communications relating to the subject matter of the mediation, we do not read the subsection to mean that the circuit court is prevented from knowing the subject matter of the mediation. Otherwise, the circuit court could never know, in this particular set of circumstances, if there had been an attempt to mediate issues prior to motions being filed in the circuit court. Here, the circuit court refused to hold a hearing to make this determination.
*480 The circuit court instead, through its trial-court administrator and by email, conveyed to both parties' counsel it wanted mediation scheduled within ten days or the court would dismiss the contempt petition. As evidenced by the two emails contained in the record, counsel reviewed their schedules for available dates and contacted the mediator for her available dates; the mediation was scheduled within ten days, but it was not set to occur until two and a half months later, in April 2018. Because the mediation was not fully completed within ten days from the circuit court's first directive to schedule mediation, the circuit court dismissed Janet's contempt petition.
James contends that because Janet did not mediate prior to filing her contempt petition, the circuit court was correct to dismiss her petition. We do not agree. The circuit court abused its discretion on this issue as well. First, as we discussed above, the parties agreed some issues had been mediated. Second, the circuit court's directive, through the trial-court administrator, was to schedule mediation within ten days, which was done. Then, as the circuit court learned the mediation was not scheduled to occur for approximately two and a half months, it amended the directive-not only was mediation to be scheduled, it was to occur within ten days. When the mediation was not completed within ten days, the circuit court dismissed Janet's contempt petition, which was an abuse of discretion. Janet was not dilatory in scheduling the court-ordered mediation-it was scheduled within the ten-day window set by the circuit court; however, the circuit court then amended its directive requiring mediation to occur within ten days-a nearly impossible task to complete when trying to coordinate a common date with the two parties, their attorneys, and the mediator. This short window was punitive to Janet and was an abuse of discretion by the circuit court.
Janet also argues the circuit court abused its discretion in dismissing her contempt petition without qualification while dismissing James's counterpetition for contempt without prejudice, and in failing to rule on her motions to strike, for clarification, and for reconsideration. Given our holding that the circuit court abused its discretion in dismissing her contempt petition, it is not necessary to address these arguments. For the above reasons, we reverse and remand this case to the circuit court for a hearing (1) to litigate the issues the parties agree were mediated in July 2017; (2) to determine which, if any, of the other issues on which the parties disagree were mediated; and (3) to determine if the parties mediated in good faith.
Reversed and remanded.
Harrison and Klappenbach, JJ., agree.